97 N.J. Super. 542 (1967)
235 A.2d 503
STATE OF NEW JERSEY
v.
GEORGE C. RILEY, DEFENDANT.
Superior Court of New Jersey, Monmouth County Court, Law Division (Criminal).
Decided November 6, 1967.
*545 Mr. Ralph A. Real for defendant.
Mr. Thomas L. Yaccarino, Assistant Prosecutor, for plaintiff (Mr. Vincent Keuper, Prosecutor).
SIMMILL, J.S.C.
On April 13, 1965 the Monmouth County grand jury returned five indictments against defendant. The procedure in presenting the matters before the grand jury was that the prosecutor prepared a list naming the charges and the witnesses. He also prepared for the clerk of the grand jury a so-called voting sheet which was marked D-1 in evidence. That voting sheet has imprinted upon it, among other things, the names of the grand jurors and was used by the clerk to record the vote. The prosecutor had also typed on the same the charges against defendant. The document was given to the clerk. The prosecutor called witnesses and the grand jury took a single vote on all of the charges, which resulted in five separate indictments. The clerk recorded on D-1 the vote of every grand juror, all of whom had voted in favor of indicting defendant. The prosecutor testified that if multiple charges were presented to a grand jury and if there was any dissent, the practice was then to take a separate vote on each charge. In this case there were no dissents.
The indictments were prepared under the aegis of the chief clerk of the prosecutor's office, who was under the control of the prosecutor. The prosecutor signed the same, submitted the formal indictments to the grand jury where they were signed by the foreman and then handed up to the court. Defendant now attacks the validity of indictment No. 348-64; he contends that a separate vote on each indictment is essential to its validity and in the absence thereof the indictment is invalid. Parenthetically, the court notes that defendant was tried on this indictment, found guilty and sentenced, *546 subject, however, to a ruling on this motion. Defendant's contention is rejected for the reasons set forth below.
At the outset it is to be noted that this court's power to quash indictments is exercisable only on the "clearest and plainest grounds," State v. Weleck, 10 N.J. 355, 364 (1952); State v. Davidson, 116 N.J.L. 325, 328 (Sup. Ct. 1936), and unless an indictment is "palpably defective," State v. Winne, 12 N.J. 152, 182 (1953); State v. Russo, 6 N.J. Super. 250, 254 (App. Div. 1950), it should stand. In the present case the indictment is not defective upon its face, nor is it attacked as such. Instead, the infirmity alleged is that the procedure of the grand jury in voting on the charges was irregular. Generally, however, there are no standards laid down in law for the procedure of the grand jury. State v. Garrison, 130 N.J.L. 350 (Sup. Ct. 1943). See O'Regan & Schlosser, New Jersey Criminal Practice (rev. ed. 1950), § 160. That body is generally unfettered by technical rules, Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), rehearing denied 351 U.S. 904, 76 S.Ct. 692, 100 L.Ed. 1440 (1956), and within the confines of whatever constitutional or statutory provisions might be applicable, is free to adopt for itself the rules and procedure governing its modus operandi. See 38 C.J.S. Grand Juries § 37. As a constitutional matter, the only requirement is that an indictment be returned by an unbiased and legally constituted grand jury. If an indictment so returned is valid on its face, it is sufficient to call for a trial on the merits of the charges contained therein. Costello v. United States, supra.
Defendant argues by analogy to R.R. 3:4-7 that since disassociated offenses may not be charged in the same indictment, disassociated offenses cannot be voted on simultaneously by the grand jury. The analogy fails, however, for want of an analogous situation. The purpose of R.R. 3:4-7, "economy and efficiency and [the avoidance of] * * * a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of defendants to *547 a fair trial," State v. Manney, 26 N.J. 362, 366 (1958), has little application to the purpose and function of a grand jury, In re Cardinale, 36 N.J. Super. 137, 140 (App. Div. 1955), or the purpose and function of an indictment, State v. Winne, supra, at p. 178. Again, there being nothing which expressly requires that a grand jury vote separately upon each accusation against an accused or separately upon the contents of any particular indictment, the general principle that a grand jury is free to adopt whatever procedure it deems desirable will not be abrogated.
Finally, on this question this court cannot see how, as a matter of factual possibility, the grand jury could vote separately on each indictment even if it desired to do so. Indictments as such are not and in fact cannot be voted on by the grand jury. That body considers charges made against persons, and votes on these charges on the basis of the evidence presented. In re Cardinale, supra. Only after such a vote can an indictment, properly so-called, come into being. See O'Regan & Schlosser, op cit. § 174. To require that the grand jury vote on an indictment is to necessitate the pre-existence of that which legally must be the culmination of grand jury action. Indeed, if indictments existed prior and were prerequisite to grand jury action there would be no need for that body to act.
But defendant contends that he was possibly prejudiced by the fact that the grand jury voted on several charges by single vote. The source of this prejudice is (1) the grand jury members were denied the right of voting negatively on one or more of the charges while voting positively on the others, and (2) the presentation to the grand jury of several crimes against a single defendant might have influenced the vote as to any one charge. As to the first supposition, common sense, the slightest faith in human intelligence and integrity, and the testimony of the Monmouth County prosecutor dispel any fear that a grand juror's freedom to vote was denied. To suggest that a grand juror would vote against the dictates of his conscience because he felt compelled to do so by the *548 voting procedure adopted indicates little respect for the institution of grand jury and the individual members of that body. But in any case the testimony of the Monmouth County prosecutor and the grand jury clerk, which testimony is preserved in the transcript of the hearing in this matter and need not be repeated here, clearly shows that the grand jurors were fully apprised of the charges on which they were voting, the alternatives presented to them with respect to their votes, and the method by which they could express differing views on different charges. The fact that the grand jury voted unanimously on all of the charges does not indicate that such a vote was forced by an unclear procedure.
Defendant's second reason for alleging possible prejudice is equally without merit. He claims that a juror's vote on any one charge might be influenced by the fact that the juror knows of other charges against the same defendant. The fallacy of this contention is evident when the logical implications of it are examined. To take this argument to its logical conclusion would be to require a different grand jury for every charge against any one defendant. Thus a person accused of ten robberies could be indicted for all only after ten different grand juries have sat, each one considering and voting on one, and only one, charge. This court cannot accept that justice or anything else requires such procedure.
Furthermore, and fundamentally, it must be borne in mind that a grand jury does not determine guilt or innocence; it does not try a case on the merits. See In re Schwartz, 133 N.J.L. 79 (Sup. Ct. 1945), reversed on other grounds 134 N.J.L. 267 (E. & A. 1946); Rosetty v. Hamilton Tp. Com., 82 N.J. Super. 340 (Law Div. 1964). The principal function of the grand jury is to hear evidence against persons and to determine whether such persons shall be required to stand trial. In re Cardinale, supra; Rosetty v. Hamilton Tp. Com., supra, at p. 348. Even assuming arguendo that a grand juror's knowledge of several charges against the same person would influence his objective consideration of any one charge, any such prejudice would be vindicated by the trial *549 on the merits where all the evidence on a particular accusation from both sides would be presented and subjected to the scrutiny of cross-examination and the determination of guilty beyond a reasonable doubt by a jury. However, as an actual matter, there is no prejudice simply because the grand jury knows of several accusations against a single person. Cf. State v. Hunt, 25 N.J. 514 (1958), where the grand jury was told that a prior grand jury had returned an indictment for murder against the defendant for the same murder, which indictment was technically deficient and thus a second one was sought. The court held that defendant was not prejudiced by the fact that the grand jury was told of the prior indictment.
The indictments being valid upon their faces, there being no irregularity in the procedure of the grand jury, and defendant not having shown any substantial prejudice to him by the manner in which the indictments were handed up, his motion to quash is denied.